HARRISON REED, Respondent,

*vs.*

LOYAL H. JONES & ERASTUS W. DRURY, Administrators of HARVEY JONES, *et al.*, Appellants.

APPEAL FROM CIRCUIT COURT, MARQUETTE COUNTY.

A written contract for the sale of land, where no fraud or mistake exists, cannot be controlled or varied by a verbal agreement made at the same time, or previously, concerning the same lands.

Ordinarily courts do not consider it essential that the purchase money should be paid at the precise day appointed for the payment, when the parties do not make the time of payment essential in the contract itself, and where the court has power to compel the purchaser to make ample compensation to the seller for the delay.

Where J. made a contract to convey one-fourth of certain land to R., on the payment of $1,250 in one year, and before the expiration of the time, R. assigned one-half of his interest to Y.; on condition that Y. should pay the amount due, and procure a deed from J. to R. of one-eighth of the land; and afterwards, without making the payment, or procuring the deed to R.; Y. assigned his contract to J.; held, that J. could not, under this assignment, set up that R. had no interest in the land at all; nor could J. claim under this assignment, without first making a deed to R. for one-eighth of the land. If J. refused to make the deed for one-eighth of the land, the parties were thereby restored to their original equities, and R. was entitled to make the payment, and to have a deed for the one-fourth as stipulated in the original contract.

This was a bill in chancery to enforce the specific performance of a contract between the plaintiff, and Loyal H. Jones, relating to a sale of lands lying at the outlet of Lake Winnebago, and embracing the town of Neenah. The bill sets forth that by an act of Congress approved March 3d, 1843, the lands on which the improvements for the benefit of the Indians had been made, was ordered to be sold under the

direction of the War Department; and he made proposals to buy them. His proposals were accepted, and he deposited the amount $4,760 in the Wisconsin Marine Fire Insurance Company, a general depository of the United States. That he borrowed the money of George Smith, and assigned to him the certificates of purchase as security for the loan at 12 per cent. interest. The department refused to sanction this transaction; and in June, 1846, Reed made a verbal agreement with Jones, by which Jones agreed to advance $5,000, and he went to Washington City to secure the title to his land. Reed was to give a bond on the receipt of the money, conditioned that if successful in getting the title, then he was to convey one tract to Jones; and if not, then he was to return the money advanced. That if Reed should get the title and make the deed for the lot, then Jones was to agree to reconvey one-fourth of this last tract, if Reed should within three years pay for the same $1,250, with interest at ten per cent. That he made the bond, and went to Washington where he received the money. That he obtained the title to the lands; and then went to Gloversville, Fulton county, New York, and in accordance with the bond, gave the deed to Jones for the lot. That Jones refused to make the contract to reconvey, on the ground that a contract to pay ten per cent. executed in New York, would be inoperative and void. But they made a written memorandum in relation to it, with a stipulation to pay $1,250 with interest at seven per cent. in one year. This contract was to stand until Jones should come to Wisconsin, where this memorandum was to be destroyed, and a new one made running three years at ten per cent., as specified in the verbal agreement.

The agreement is set forth at length, and states that Jones has sold to Reed, for the sum of $1,250, with interest at seven per cent., to be paid in one year from date, the one undivided fourth part of the tracts, containing 306 acres; and "that as

far as improvements are concerned upon the property, each party shall bear his proportion of the expense, as far as such improvements are thought necessary, and if either party shall advance more than his proportion of said expenses, he shall receive twelve per cent. interest upon such advances until paid, and the amount shall be a lien upon the property."

The deed of Reed was duly acknowledged and recorded. He went into possession of the premises, and so remained until in the month of November, 1846, and expended thereon in improvements about $300. That after Jones' arrival in November, they expended various sums of money under the contract in improvements. That Jones refused to surrender the agreement and give the one he had agreed to make. That Jones quarreled with Reed, and the latter left the premises in the sole possession of Jones who has received the rents, &c., and has failed to account for them to Reed. The bill then charges that Jones has sold some portions of the tract without consulting him ; that he has made large and entirely unnecessary expenditures of money, whereby the interests of Reed are greatly affected, and without his sanction or approval.

That at the date of the conveyance, there was a water power on the premises, of great value, formed by a wing dam built partly across the branch of Fox river, and a saw-mill and grist-mill. That Jones has destroyed the wing dam and built another across the entire stream, violating the charter by which the right to build the dam across the river was built, and has incurred the liability to have the dam removed ; and that it would require a great outlay of money to restore the dam to its former condition ; that all this expense had been incurred without his consent or approval.

That Jones would not make any answer to Reed's inquiries whether he would make the bond he had agreed to make, until after the contract made had fallen due, when Jones informed him that the written one was the only one which he

considered binding, and which he should abide by. That Jones had said that he was absent from the place where the contract was payable purposely to prevent Reed from paying it on the day it became due; and left no person authorized to receive, or to make the deed for the undivided one-fourth. The bill then averred a tender of the $1,250, and interest, and a readiness to pay, according to the stipulations of either the written or verbal agreement. That Jones had refused to receive the money, and had commenced an action at law for trespass on the land against him, which was still pending.

The bill prayed for an injunction against Jones from prosecuting this or bringing any more suits at law concerning the land, and from selling or in any way encumbering it, and from expending money in improvements thereon.

A temporary injunction was granted by Chief Justice Stowe the 17th of April, 1849.

The answer of the defendant, Loyal Jones, denied all knowledge of the matters relating to the first purchase; but admits the loan of the money to make the payment in Washington, and gave a copy of the bond to return the money if the title was not secured; that there had been some conversation about the sale, &c., but denied that this agreement was correctly stated in the bill; that there was no agreement at Prairieville or elsewhere as charged, to sell to Reed one-fourth of the tract in controversy; that Reed had deceived him in regard to the value of the tracts which were bought from the government; that Reed obtained the title as stated in the bill; and Jones furnished the money for that purpose; that Reed made a deed to Jones of his title to the tract of land; and that he made the bond set forth in the bill to reconvey the one-fourth of the tract upon the re-payment of $1,250, in one year; that one reason for the making of this contract was that Reed was to use his influence in building up a town at that place. Jones denies that he agreed to take up this agree-

ment and make another to run for three years as charged. He admits that Reed had sole possession of the tract from the making of the deed until Jones came to Wisconsin, and afterwards it was in their joint possession; and insists that the expenditures were made with the approval of both. He denied that he was contentious, and drove off Reed, but admits that Reed went off, and left him in sole possession; and that he had received the rents and profits ever since; but denies that Reed is entitled to any of them; also admits that he has sold some portions of the land, without the approval of Reed, and without consulting him, and claims that he had no right to be consulted in relation to it. He also admits the tearing away the wing dam, and the building the new dam; that he had told Reed that he should hold him to the strict fulfilment of the agreement. He admits that on the 4th of April, 1849, Reed offered him a bag of money, he does not know how much was in it, and demanded a deed of the undivided one-fourth part of the premises which he refused to execute; but denies all former tenders, and all tenders of re-imbursements for improvements made.

The answer also set up, that Reed had made a power of attorney to Jones which let him into possession of the tract of land and gave him power to sell, &c., to receive the proceeds and apply them towards the payments of the amount due, $1,250, and the interest thereon. This power was dated April 12, 1847. That it was revoked by Reed on the 15th of May, 1847, when Reed made a conveyance of his interest to Charles Yale; whereby Yale agreed to pay the amount due from Reed to Jones, for one-half of Reed's interest in the premises. That Yale had deeded his interest to him, Jones. That there had been no settlement of the accounts of the expenditures, &c., on the land, but in part; that upon that partial settlement it was agreed that Reed had expended between three and four hundred dollars; that Jones has a set-off

against this of a much larger sum, amounting to $2,686 65, laid out in improvements, for which Reed has in no manner accounted; and since he has been in the sole possession, he has expended $15,725 in improvements upon the tract exclusive of his personal superintendence ; and that the same was prudently expended, and not with a view to hinder or embarrass Reed.   That since he purchased the right of Yale he claims to own the whole tract in his own right.

On the 8th of November, 1849, Harvey Jones died, and an order was made letting in Loyal H. Jones and Erastus W. Drury, his administrators to defend the suit, also the heirs, Gilbert, Abagail, and William Jones, infants, for whom Loyal H. Jones was appointed guardian *ad litem*, May 2d, 1851.   The cause was removed from Winnebago county to Marquette in April, 1851.   The administrator .put in an amended answer relying exclusively on the assignment of Reed's interest to Yale, and Yale to Harvey Jones.

The cause came on for trial on the 13th of October, 1853, when complainant read the depositions of Cornelius Northrup and James Blood to prove the tender.   Northrup testified on this point, as follows :

" The time, I think, was on the day after town-meeting in the year 1849, in April.   Mr. James Blood and Mr. Reed went into the house occupied by Loyal H. Jones, as Mr. Reed stated, for the purpose of making the tender in question, Mr. Blood had a bag of specie which was said to contain the amount, and which I saw counted a short time afterwards.   Mr. Reed stated to Mr. Jones that he came to pay him his purchase money and receive his deed.   Mr. Jones denied his having any claim on the premises specified, but offered to receive his money on other claims which he had against him.   Mr. Harvey Jones and Mr. Loyal Jones were both present.   I have reference to Mr. Harvey Jones, as far as I have stated.   Mr. Reed stated that Mr. Blood would count him out the money.

Mr. Reed then demanded his deed. Mr. Blood started and went to a stand, set the bag down on it, and proceeded to untie it. Mr. Jones then went and opened the door and told Mr. Reed there was a hole which the carpenter left and he might walk out of it. Mr. Blood took up his money and Mr. Reed and myself went out. We then went into a room and counted the money. There was somewhere between sixteen hundred and sixty and seventeen hundred dollars. I do not recollect definitely the amount. I do not know that I know of anything beyond that."

Blood testified: "I cannot swear that a tender was ever made on any such contract, from the fact that I have never seen and know nothing about the contract. In the fore part of April in the year 1849, I do not remember the day, I went with Mr. Reed and Mr. Northrup to a building near the mill in which I believe Mr. Jones kept an office at that time. Mr. Reed said he wanted to pay Mr. Harvey Jones some money for an interest in his property here. I carried the money into the office myself, I believe in a bag. Mr. Reed told Mr. Jones, I believe, that he had some money there to pay him for an interest in this property, and requested me to count out the money to Mr. Jones. I laid the bag upon the table or stand, and untied it for that purpose. I think Mr. Jones said that Mr. Reed had no interest in the property whatever. As I untied the bag, I asked Mr. Jones whether he would accept of the money, or refuse it—I don't recollect which, I think I asked him if he would accept it. He answered me by asking me if that was all the business I had there. He immediately got up and opened the door of the office, and requested Mr. Reed to leave the office. Mr. Reed took up the money and went out immediately, and I went out with him, and Mr. Northrup went out also. We walked up the street together to Mr. Dennison's office. I took the bag from Mr. Reed and went in there and counted it with Mr. Northrup. There was

in the bag between sixteen and seventeen hundred dollars in gold coin. I do not recollect the exact amount. That is all, I believe, that I remember in relation to the transaction that is material."

The complainant also read several letters from Harvey Jones, but they are omitted, as unimportant to the matters decided and acted upon by the court, and rested his case.

The defendants then introduced Charles Yale in open court who testified, that he came to Wisconsin from Gloversville, and knew Harvey Jones there; and then proceeded, as follows:

" Harvey Jones and I were intimate, on friendly terms ; I was informed by him prior to my coming west, of his land transactions at Neenah, in this State. After I made the contract with Reed, I communicated the fact to Jones. I offered to convey or assign that contract, for the land therein mentioned, to Harvey Jones before the time the contract was assigned. The quit-claim deed and the assignment of the contract were executed, I think at the time they bear date. It was the same day and before Harrison Reed made his tender. I had agreed with H. Jones some time prior to that, to make him a quit-claim at his request. On that day I had been to see a patient, and returning, I met Loyal H. Jones, and he told me that Harvey Jones wanted me to come and make the quit-claim as soon as I could, as he had been informed H. Reed was coming that day to make a tender. I went to my son's store, took a blank deed, and filled it out all except the consideration—went before Justice Donaldson and acknowledged it—carried it down to Loyal H. Jones' house, where Harvey Jones kept his office. We three went into another room, I showed it to Harvey Jones, and asked him what sum I should put in as a consideration; after some little conversation, I agreed to put in the sum of one hundred dollars Various sums were mentioned, and some one remarked that the sum should not be too large, or too small; if it was too

large, in case Reed should bring suit, it would fix the price— and if too small, it would excite suspicion, as not being a *bona fide* transaction. I am not able to say whether Harvey and Loyal were both present during all this conversation. My impression is they were not. I assigned the article at the same time, and I think gave the deed and contract into the hands of Harvey Jones. There was no money paid at that time, but there was an understanding before that time, that I should receive a liberal or generous consideration. There has never anything been paid, as a consideration of that conveyance and agreement. I have not now, nor have I ever had, any bond, note or obligation, or any writing, or proof, evidencing an obligation, to pay that consideration.

"Harvey Jones first spoke to me about assigning the contract to him, it was in January, 1849. I mean the first time he proposed the thing to me, I think the first time he spoke to me about the contract at all, was in the fall and winter of 1847–8. He never spoke about it previous to that time; it may have been 48–9. Harvey Jones knew nothing of my making the contract with Reed, either before or at the time it was made: I so declared to Reed at the time of making it.

"Before I left Gloversville, Harvey Jones had expressed to me his anxiety to get rid of Reed in that property. I had no reason to suppose that my contract would be dissatisfactory to Harvey Jones. I knew Jones would be glad to get rid of Reed on any reasonable terms. I sent a copy of the contract to Jones, by the next mail, after making the contract."

On the whole evidence, the circuit court found the making of the contract of sale, of the undivided one-fourth; that Jones had been in possession of the premises, and sold considerable amount of property, and for the sales and rents had received $5,882, one-fourth of which was more than sufficient to pay the amount due from Reed; and then decreed:

It is therefore, in consideration of the premises, ordered

adjudged and decreed, that the said Harrison Reed complainant, is equitably entitled to a legal conveyance and title to the one undivided fourth part of the lands and premises in his said bill and the Gloversville contract mentioned, deducting what has been sold and conveyed by the said Harvey Jones prior to the said 27th day of April, 1849; and it is thereupon further ordered, adjudged and decreed that the said heirs and personal representatives of the said Harvey Jones, deceased, the defendants in this suit, within thirty days from the date of this decree, make, execute, and deliver, to the said complainant, a good, valid and sufficient deed and legal conveyance in the law, of one undivided fourth part of the said lots, lands and premises, with the appurtenances, in said bill and Gloversville contract mentioned; being the same hereinbefore mentioned and described, remaining unsold and unconveyed, by the said Harvey Jones, deceased, on the said 27th day of April, 1849, and in default thereof, that this decree operate as such conveyance, with the like force, and effect, as though the same had been executed by all the heirs of said estate, according to the statutes in such case made and provided. And it is further ordered, adjudged and decreed, that the said complainant do have and recover, from the said defendants, his costs in this suit expended to be taxed, and execution may issue therefor.

By the Court,

2d May, 1854. CHAS. H. LARRABEE.

From this decree the defendants appealed to the Supreme Court.

*E. W. Drury* and *Finch & Lynde* for appellants.

1. The complainant obtained the contract set forth in the bill, by fraud, covin and misrepresentation. The statements of the bill are unreasonable and inconsistent. Reed had no valid claim upon lots 5, 10, and 11, by virtue of his propo-

Vol. VIII. 26

sals, pre-emption or otherwise, at the time of his first arrangement with Jones, and it does not appear but that any other person could have entered the land as well as himself. It is therefore quite evident that the conveyance of lots 5 and 11 to Reed, by the investment and use of the money furnished by Jones, did not rest solely upon the consideration of Reed's services at Washington in entering the land, for such a consideration would have been altogether inadequate. But this is not all. The bill states that, at the same time, and in consideration of the *same services,* Jones agreed to convey to Reed one-fourth of lot 10 also, upon his paying $1250 with interest, in three years. The *services* of Reed at Washington are made by the bill the *main* inducement and consideration of the conveyance to him of all the interest he was to have in the lands, embracing all of lots 5 and 11, and one-fourth of lot 10, while the $1250 was merely *nominal.*

These statements are so grossly unreasonable and inconsistent as to make it obvious that there must have been some other and more important consideration than the mere service of Reed in entering or purchasing the land, to induce Jones to part with so large a share of the purchase, but the bill very artfully conceals and leaves out what that consideration was. Fortunately, for the rights of the defendants, the full, fair and perfect answer of Harvey Jones supplies this important omission, and makes the history of this transaction consistent. In that answer the principal inducement and consideration of the conveyance of lots 5 and 11, and the agreement to convey one-fourth of lot 10 to Reed, are clearly set forth. Reed was well acquainted with, and had for a long time resided near the lands in question. Jones had, up to that time, resided in the State of New York, had never seen the lands, and was totally unacquainted with them, and depended solely upon the representations of Reed as to their value, quality and situation. The object of the purchase was to lay

Reed vs. Jones and Drury.

out and improve a town plat, make a landing upon the Fox river, and improve an important hydraulic power. Reed represented lot 10 as being the only tract proper or necessary for these purposes, and that lots 5 and 11 "were only valuable for farming lands, and no more valuable for the purposes of said town, than were other lands in the vicinity which could be purchased for one dollar and a quarter per acre." Upon these representations Jones implicitly relied and consented that Reed should have these two lots.

Again, Reed at the same time represents that, at the place where these lands are situated, he had a "very powerful influence and influential friends to aid and promote the growth of a town to be laid out upon said tract number ten." Jones, "desirous of securing the friendly aid and co-operation of said complainant and his friends in advancing the settlement and growth of such town, and confiding in the assurances and representations of said complainant to that end, was induced to and did" make the agreement to convey to him one-fourth of said lot 10. These representations, which induced the making of the said agreement, were false and fraudulent, as shown by the answers and testimony.

A court of equity will not enforce such a contract against the party defrauded. Lord Chancellor Thurlow, in the case of *Aerille vs. Wilkenson*, declares the doctrine that, "if a man upon a treaty for any contract, will make a false representation, by means of which he puts the party bargaining under a mistake upon the terms of the bargain, it is a fraud." 1 Bro. Ch. R., 546.

The same principle is recognized and affirmed in the following cases; *Chesterfield vs. Janssen*, 2 Vesey, 155, 6; *Evans vs. Bicknell*, 6 Vesey, 173, 183; *Pidlock vs. Bishop*, 3 B. and Cres., 605; *Laidlaw vs. Organ*, 2 Wheat., 178, 195; *Shackleford vs. Hawley*, 1 A. K. Marsh., 500; *Ball vs. Lively*, 4 Dana. 370; *Lewis vs. McLemon*, 10 Yerg., 206; *Harding*

*vs. Randall,* 15 Maine, 332; *Boyd vs. Dunlap,* 1. John. Ch. R. 478; *Parker vs. Carter,* 4 Munf., 273; *Joice et al. vs. Taylor,* 6 Gill & John., 54; *Livingston vs. Peru Iron Co., et al.,* 2 Paige, 390; *Cowper vs. Gordon, et al.,* 4 Black., 110, 231; 1 Story' Eq., §§ 190, 191, 192, 193, 194, 206, 222.

2. When contracts are sought to be enforced in Equity, the court will not decree performance in cases of fraud, or of hard and unconscionable bargains, or where the decree would produce injustice, or where it would be inequitable under all the circumstances. Such decree is not the right of the party, but of sound discretion in the court. Hence, it requires much less strength to resist a bill to perform, than to enforce specific performance. Courts of Equity will admit evidence of fraud to resist a decree of performance, that would not be permitted in other cases. 2 Story's Eq., §§ 769, 770.; *Seymour vs. De Lancy,* 6 John. Ch. R. 222; *Tabey vs. The County of B.,* 3 Story, 800; *Frisby vs. Ballance,* 4 Scam., 287; *Gould vs. Womack,* 2 Ala. R., 83; *Clitherall vs. Ogilvie,* 1 Dess., 250, 257; *Schmidt vs. Livingston,* 3 Edw. Ch. R., 213; *Moidsett vs. Johnson,* 2 Black., 431; *Fitzpatrick vs. Beatley,* 1 Gilman, 454; *Cathcart vs. Robinson,* 5 Peters, 263; *Rodman vs. Zilley,* Saxton, 320; *King vs. Hamilton,* 4 Peters, 311; *Thompson vs. Todd,* Pet., C. C.R., 308; *McWharton vs. McMahon,* 1 Clark, 400; *Carberry vs. Tamsehill,* 1 Harr. & J., 224; *Perkins vs. Wright,* 2 Harr. & McHen., 324; *Fisher vs. Warrall,* 5 Watts, & Serg., 478; *Henderson vs. Hays,* 2 Watts, 148; *Leigh vs. Crumb,* 1 Ired. Ch. R., 299; *Barksdale vs. Payne,* Kelly Ch. R., 174; *Eastland vs. Vanarsdale,* 3 Bibb, 274; *Bowman vs. Irons,* 2 Bibb, 78.

3. The complainant must rely *solely* upon the written agreement, of which he seeks specific performance, and is not permitted to vary or enlarge its terms by parol evidence. In this case he rejects the written contract of sale, and insists upon a verbal agreement entirely different in its terms, and

then relies upon the *former* in his prayer for relief, and upon the *latter* to enlarge the time of performance. Gresley Eq. Ev., 290 ; *Hare vs. Shearwood,* 1 Vesey, 243; *Townsend vs. Stangroom,* 6 Vesey, 328 ; *Elder vs. Elder,* 1 Fairfield, 80 ; *Chadwick vs. Perkins,* 3 Greenl., 399 ; *Hayward vs. Carroll,* 4 Harr. & J., 518 ; *Chetwood vs. Brittan,* 1 Green Ch. R., 438 ; *Jarvis vs. Palmer,* 11 Paige, 650 ; *Rogers vs. Atkinson,* 1 Kelly's R., 12 ; *Doar vs. Gibbes, et al.,* Bailey's Eq. R., 371 ; *Stevens vs. Cooper,* 1 John. Ch. R. 429 ; *Dempster vs. Buckhart,* 2 Bibb, 28 ; *Osborn vs. Phillips,* 19 Conn., 63 ; *Rivell vs. Hussey,* 2 Ball & B., 288 ; *Savage vs. Carroll,* 2 id., 451.

4. The defendant, however, may resort to parol evidence in such a case, to resist specific performance, not only to show fraud, but to prove what the consideration and inducement of the contract really were, and any facts and circumstances that would tend to defeat the complainant's equity. *Winch vs. Winchester,* 1 Ves. & B., 378 ; *Rich vs. Jackson* 4 Brown. C. C., 519 ; *Willer vs. Chetwood,* 1 Green. Ch. R., 199 ; *Asken vs. Poyas,* 2, Dess., 145 ; *Land vs. Jeffries,* 5 Randolph, 211 ; *Harvey vs. Alexander,* 1 Randolph, 219 ; *Osborn vs. Phelps,* 19 Conn., 63 ; *Townsend vs. Stangroom,* 6 Vesey, 328 ; *Higginson vs. Clows,* 15 Vesey, 516.

In applying these two principles to the agreement in question, it will be considered that the contract itself contains no promise, stipulation or covenant, dependent or otherwise, that Jones should convey ; and such a covenant can only be implied by going out of the contract, from all the facts and circumstances in the case. The contract itself is conclusive, both as to the consideration and time of payment expressed in it, so far as the rights of the complainant are concerned. But the defendants may go out of the contract and show what the real consideration was, the declarations, promises, and representations of the complainant, and any other facts that may subserve their defence. The defendants have shown

that the consideration of the agreement was, that Reed should "render aid and co-operation," and "interest himself and influential friends of his own, to aid and promote the growth of a town to be laid out upon said tract number ten ;" "and would use a very powerful influence in favor of the growth" of said town; and that Reed should contribute his proportion towards the improvement of said property, and pay in one year, $1,250 with interest to Jones. The complainant has wholly failed to perform any portion of his agreement, and such performance is made a condition precedent to the performance by Jones of his implied covenant to convey.

5. " No rule is better settled, than that a party cannot compel the specific performance of a contract in a court of equity, unless he shows that he himself has specifically performed, or can justly account for the reason of his non-performance." 2 Story's Eq., 750, et seq.; Newland on Con., 242 ; *Harrington vs. Wheeler*, 4 Vesey, 690 ; *Spurrier vs. Hancock*, id., 667 ; *Hertford vs. Boore*, 5 id., 719, 818 ; *Paine vs. Miller*, 6 id., 349 ; *Seton vs. Slade*, 7 id., 265 ; *Smith vs. Burnham*, 2 Anst., 527 ; *Brashen vs. Gratz*, 6 Wheat, 528 ; *Omerod vs. Hardman*, 5 Vesey, 736 ; *Alley vs. Deschamps*, 13 id., 228 ; *Eaton vs. Lyon.* 3 id., 690 ; *Hepburn vs. Auld*, 5 Cranch, 278 ; *Benedict vs. Lynch*, 1 John. Ch., 370 ; *Rogers vs. Saunders*, 16 Maine, 92 ; *Parkhurst vs. Courtland*, 1 John. Ch., 282 ; *Edgerton vs. Peckham*, 11 Paige, 352 ; *Hatch vs. Cobb*, 4 John. Ch., 559 ; *Scott vs. Shephard*, 2 Gilman, 483 ; *Church vs. Jewett*, 1 Scam., 54 ; *Doyle vs. Teas*, 4 id., 202 ; *Hatch vs. Cobb*, 4 John Ch., 559 ; *Rugge vs. Ellis*, 1 Dess., 160 ; *Longworth vs. Taylor*, 1 McLean, 395 ; *White vs. Yaw*, 7 Verm., 357 ; *Cleveland vs. Burton*, 11 id., 138 ; *Goodell vs. Field*, 15 id., 448 ; *Vail vs. Nelson*, 4 Rand., 478 ; *Lewis vs. Woods*, 4 How. Miss., 86 ; *Stevenson vs. Dunlap*, 7 Monroe, 134 ; *Brown vs. Haines*, 12 Ohio, 1 ; *Kendall vs. Alma ;* 2 Sumner, 278 ; *McClure vs. Purcell*, 3 A. K. Marsh., 61.

These authorities establish the principle—

1. That time is so far the essence of the contract to be enforced in equity, that the party must show strict performance in this respect, or a sufficient excuse for non-performance.

2. That unless the subject matter of the contract remains *unchanged,* courts of equity will not decree performance after the time has elapsed without an offer to perform on the part of the complainant, even where such an excuse for non-performance is shown, but will leave the party to his action at law; for it is considered inequitable to allow a party to wait after his contract has expired, to see whether it may or may not be profitable for him to perform, as the property may become enhanced or depreciated in value. In this case, the complainant waited two years, and until the property had greatly changed and increased in value, and that too, against his violent opposition and strenuous efforts.

3. The time always becomes the essence of the contract, whenever a party gives notice beforehand, that he shall make it so. Jones gave Reed this notice before the time expired.

4. Wherever there is the least fraud, deceit or unfairness, practiced in making the contract, time is always essential.

Reed entrapped Jones into the contract by fraudulent representations, violated every promise to aid the improvement of the property, and to furnish his proportion of the means of such improvement aided in bringing other places and improvements into competition, with the growth of the town upon lot 10, failed and refused, for a long time after the contract had expired, to pay or offer to pay the $1,250. He has done nothing and offered to do nothing, towards performing on his part, except to make a pretended tender, two years after the time, of the $1,250 and interest; and in his prayer for relief, he asks for an account to be taken, only to ascertain what Jones owes him, and does not ask that it may be

ascertained what *he* owes *Jones*, and offer in that event to pay it. Under such a state of facts, can there be any question that the complainant stands in the situation of one " doing iniquity and asking equity."

6. The assignment of the agreement to Yale is absolute, and vests the entire interest in the property in him, in such manner that Jones, with notice of such assignment, would be fully liable to Yale, if he had conveyed, or should convey to Reed. A general assignment or transfer of a chose in action, expressing no aversion or condition, is *absolute*, and cannot be varied by parol, nor can it be impeached for fraud, unless the assignor be a party to the suit. 2 Stephen's Com., 104; *Cunningham vs. Freeborn*, 11 Wend., 241; *Keyes vs. Brush*, 2 Paige, 311; *Putman vs. Ritchie*, 6 Paige, 390; *Mc-Cannahan vs. Kennedy*, 1 J. J. Marsh., 332; *Gassom vs. Sharp*, 7 Dana, 140; *Lagow vs. Bodollett*, 1 Blackf., 416; *Hall vs. Dana*, 2 Aik., 381; *Southgate vs. Montgomery*, 1 Paige, 41; *McEvers vs. Lawrence*, Hoff. Ch. R., 172; *Kenner vs. Hard*, 2 Hen. & K., 14; *Findley vs. Bank U. S.*, 2 McLean, 44; *Eveleth vs. Wilson*, 15 Maine, 109.

The testimony of Yale shows that the assignment was made to him without the knowledge of, or collusion with, Jones; and if there was any fraud in the transaction at all, it was against Jones, by placing the contract in the hands of his brother-in-law, in order to wheedle and seduce Jones to make a conveyance to Yale, by consideration of affection and relationship, when he could not, and would not legally be required to convey to a stranger, or to Reed.

7. The terms of the assignment provide an ample remedy at law for damages to Reed against Yale, in case of his failure to pay or perform, to which this court, by every rule of chancery jurisdiction, must refer him and his rights in this case. *Coe vs. Turner*, 5 Conn., 86; *Cabaune vs. Lisa*, 1 Miss., 683; *Samson vs. Hunt*, 1 Root, 207; *Poage vs. Wilson*, 2 Leigh,

490; *Hall vs. Davis*, 5 J. J. Marshall, 290; *Coombs vs. Warren*, 17 Maine, 404.

It is submitted that the above points and authorities present a full and perfect defence to the complainant's bill, any one of which even would be sufficient.

*H. S. Orton*, in continuation for the appellants.

1. Jurisdiction in equity to perform contracts in specie was introduced on account of damages at law being an inadequate remedy; and it is a sufficient answer to a bill for specific performance, that the damages recoverable at law are adequate satisfaction for the breach of a contract. *Hornet vs. Yielding*, 2 Sch. & Lefr., 552; *Parkhurst vs. Van Courtland*, 1 John. Ch. R. 285; *Tasker vs. Small*, 3 M. & C., 64; 2 Story's Eq. Jur., sec. 716 and n.

2. The parol agreement set up in this bill is denied in the answer. Had there been a parol agreement as alleged, it being followed by one in writing, the latter supersedes the former, and constitutes the only agreement between the parties. Batten on contracts, 100; *Clowes vs. Higginson*, 1 V. & B., 524; *Winch vs. Winchester*, id., 375; *Smith vs. Hanley*, 1 Ph., 391; *Parkhurst vs. Van Courtland*, 1 John Ch. R., 273.

3. In this contract, time was material, as shown by the contract itself, the situation of the property, the purpose for which the contract was made, and the notice given by Jones to Reed. *Rogers vs. Saunders*, 16 Maine, 92; *Hatch vs. Cobb*, 4 John. Ch R., 559; *Barrington vs. Israel*, 7 Ohio, 97; *Jackson vs. Logan*, 3 Leigh, 161; *Higby vs. Whittaker*, 8 Ohio, 198; *Dolont vs. Rothschild*, S. & S., 598; *Remington vs. Kelley*, 7 Ohio, 102.

4. In an agreement for the sale of land of land, time is always material, when either party chooses it shall be so; each of them has a right to demand the performance of the con-

tract on a stipulated day; and if the other party is then unwilling or unable to perform, may actually elect to rescind it, and by such an election, he is wholly freed from the obligations of the contract; and a court of equity cannot subsequently decree its specific performance. *Dominic vs. Michael,* 4 Sand., R., 374; *Benedict vs. Lynch,* 1 Johns. Ch. R., 370; Garnett vs. Macon, 2 Bro. R., 257; *Lloyd et al. vs. Collett,* 4 Bro. C. C., 469; *Lewis vs. Wood,* 4 How. Miss., 86; Dart on Vend. and Pur., 211; *Stewart vs. Smith,* 6 How., 213, and n.

In this case, when it was the duty of the purchaser to have paid the purchase money, Reed made no effort to pay the purchase money, had no intention of paying anything, had assigned and transferred all his interest in the contract, and had agreed with his assignee that in case he should fail to perform the contract, he would look to him for damages. 2 Story's Eq. Jur., sec. 783; *Fiztpatrick vs. Beatly,* 1 Gil., 454; *Ensign vs. Kellogg,* 4 Pick., 1.

If the purchaser have assigned the benefit of the contract, the suit against the vendor for specific performance should, it would seem, be by the assignee, making the purchaser defendant. Dart on Vend. and Pur., 470; *Fulham vs. McCarty,* 1 H. L. C., 703, 717; *Padwick vs. Platt,* 11 Beav., 503.

5. A party cannot call upon a court of equity for a specific performance, unless he has shown himself ready, desirous, prompt and eager. *Lloyd vs. Collett,* 4 Bro., C. C., 469; 4 Ves., 690 n.; *Harrington vs. Wheeler,* 4 Ves., 818; *Alley vs. Deschamps,* 13 Ves., 225; *Guest vs. Homfrey,* 5 Ves., 818; *Walker vs. Jeffreys,* 1 Hare, 352; *Southcomb vs. The Bishop of Exeter.* 6 Hare, 213–218; *Dorin vs. Harvey,* 15 Sim., 49.

6. Even where time is not material in itself, it may become so in its consequences. In this point of view, an increase or depreciation of the value of the property will have great weight with the court. *Brashier vs. Gratz,* 2 Wheat., 528;

*Rogers vs. Saunders*, 16 Maine, 92; *Cooper vs. Brown*, 2 McLean, 495; *Pratt vs. Carroll*, 8 Cranch, 471; *Anthony vs. Leftwick*, 3 Ran., 238; *King vs. Wilson*, 6 Beav., 126; *Heaply vs. Hill*, 2 S. & S., 29; *Walson vs. Reid*, 1 Russ. & My., 226; *Taylor vs. Brown*, 2 Beav., 183; 2 Story's Eq. Jur., § 736.

7. Equity will not decree specific performance of a contract when the purchaser has lain by and delayed completing it, even although he may have paid part of the purchase money. *Harrington vs. Wheeler*, 4 Ves., 686; *Lloyd vs. Collett*, 4 Bro. C. C., 469; *Benedict vs. Lynch*, 1 John. Ch., 370; *Wells vs. Smith*, 7 Paige, 22; *Edgerton vs. Peckham*, 11 Paige, 352; *Alley vs. Deschamps*, 13 Ves., 225; see 2d vol. 2d part of White & Tudor's Eq. L. Ca., p. 10.

8. Courts of equity will not decree specific performance of any contract when the remedy is not mutual; "each party must have an equal right and power to compel a performance. *Lawrence vs. Butler*, 1 Sch. & Lef. 13; *Parkhurst vs. Cortland*, 1 John. Ch. R., 282; *German vs. Machin*, 6 Paige 292; *Newman vs. Carroll*, 3 Yerg., 18; *Baucher vs. Vanbuskirk*, 2 A. K. Marshal, 346.

9. Nothing is deemed a *part performance*, which is not a fraud, hardship, or deceit upon the party in case the contract is not performed.

10. Expenses for improvements were by the original contract to have been borne in proportion to their respective interests, and to be a lien upon the property; and if the complainant has any interest in the property, he is as much bound to pay his proportion for the improvements as the purchase money.

*P. Yates and E. L. Buttrick*, for respondent.

The facts admitted by the answer entitle the complainant to the relief prayed. The answer admits *a contract in writing—a full description of the land—the price and time* of

payment—*possession and improvement,* according to the terms of the agreement—*tender* of the amount due, and *demand* of a deed. The matters set forth by way of avoidance do not bar the plaintiff's equity, because:

1. Time is not of the essence of the contract. Story's Equity, Sec. 776; 6 Wheat. 528, 541; 1 Peters' Rep. 464; 1 Wis. R. 527.

The fact that defendant Harvey Jones claims to have received a quitclaim deed of an undivided fourth of the premises on the fourth of April, 1849, from Charles Yale, is conclusive evidence that he then considered that there was an outstanding equity, which was worth obtaining, and to which *time was not a bar.*

Moreover, a purchaser by quit claim deed, is not a purchaser for a valuable consideration without notice. *Oliver vs. Piatt,* 3 How., 333. And a deed of bargain and sale, without any pecuniary consideration, is void. *Jackson vs. Solering,* 16 Johns, 515; *Jackson vs. Cadwell,* 1 Cow., 622; *Corwin vs. Corwin,* 2 Selden's Rep. 342.

2. The contract with Charles Yale, dated May 15th, 1847, was conceived and executed to defraud Reed, and cannot in any manner conclude, or affect Reed's rights in the premises.

3. The instrument of April 12, 1847, admits the interest of Reed in one-fourth of the property. It was a power coupled with an interest, and irrevocable. 8 Wheaton, 174; 2 Mason, 244; 5 Dana, 514. *Rawson vs. Copland,* 2 Sandf. Ch. R. 251.

When the equitable title is complete, a legal conveyance will be decreed, though the property may have been much enhanced or depreciated in value. Subsequent events will not, in equity, vary a contract fairly entered into. *Powell vs Hussey,* 2 Ball & Beatty, 287.

[The following paper has been found among the papers of the late Chief Justice, and is given entire, with the order entered, as the opinion of the Supreme Court in the case.— REP.]

*By the Court*, WHITON, C. J.   We do not see as the verbal agreement set out in the bill, and which preceded the written contract for the sale of the land to the complainant, can be relied upon, for the purpose of controlling or varying the latter. Admitting that it has been proved as alleged in the bill, still by every sound principle of law applicable to contracts, where no fraud or mistake exists, the written contract must control. It contains the final agreement of the parties in relation to the sale of the land, and we cannot permit the alleged previous contract to vary it.   We shall therefore assume in disposing of the case, that the written contract set out in the bill and admitted in the answer, contains the agreement of the parties in relation to the sale of the land.

This agreement recites that Harvey Jones had sold to the complainant the land in dispute, and we think it bound Jones to convey it to the complainant upon receiving the price specified in the contract, at the time therein appointed for the payment; and bound each party to pay his proportion of the cost of improvements, made upon the property, and if one advanced more than his proportion, for the purpose of making the improvements, he was to receive interest thereon at the rate of twelve per cent., and made the money so advanced a lien upon the property.   The question is, has this agreement been so kept and performed by the complainant; or if not performed by him, is there such an excuse for the non-performance as to entitle him to a conveyance.   The principles which govern contracts of this nature are quite familiar.

Ordinary courts of equity do not consider it essential that

the person who purchases the land should pay the purchase money at the precise day appointed for the payment, when the parties do not appear to have made the time of payment essential in the contract itself, and when the court has the power to compel the purchaser to make ample compensation to the seller for the delay.

The defendants contend that this contract was obtained by the complainant, by fraud and misrepresentation, and that in such cases the court will not decree a conveyance. This is true. But we see no evidence of fraud in the complainant, in the manner in which he obtained the contract from Jones. He had, just before the contract was entered into, purchased the land in dispute, together with other lands, from the United States, with money furnished by Jones, had taken the title in his own name but conveyed it to Jones, and we have looked in vain at the testimony to discover evidence of fraud or misrepresentation. Jones appears to have contracted without very much investigation as to the value of the land; but this is no reason why he should be relieved from the performance of his contract, if it was fairly entered into. By it, he was to receive for one quarter of the land described in the contract, one quarter of the sum which he had advanced to the complainant to purchase this and the other land bought by the complainant of the United States.

It is further said by the defendants that time was material as shown by the contract itself, or at least as shown by the situation of the property and the purpose for which the contract was made, and the notice given to the complainant by Jones, that he should hold him to a strict performance of the contract. We see nothing in the contract which denotes that the parties intended to make the time when the payment was to be made material The contract says nothing on the subject. It provides for the payment of the purchase money, in one year from the date of the contract, making use of the

ordinary terms to express the time, without any intimation that the time was material. Nor do we see anything in the situation of the property, or the purpose for which the sale was made to indicate such an intention. It appears that the parties contemplated that improvements might be made on the land, and provided a mode for securing the person who should advance the money to make them; but this does by no means imply that the parties intended that the right of the complainant to demand a deed of the land should depend upon the payment of the purchase money, at the exact time specified for the payment.

If any doubt existed upon this subject, the power of attorney which the complainant executed to Harvey Jones, authorizing him to sell the land, would remove it. This power of attorney was executed on the 12th of April, 1847, about three months before the time fixed upon for the payment of the purchase money. It was accepted by Jones, and empowered him to sell the land and execute the proper deeds and conveyances. It further empowered him to collect the complainant's proportion of the rent, and also his proportion of the money arising from the sales of the land, and to apply them in payment of the sum due from the complainant for the land, until the same and the interest thereon should be fully paid. This shows that the parties did not think it necessary that the purchase money should be paid at the exact time stated in the contract to entitle the complainant to a conveyance.

But the most serious objection which is made to complainant's obtaining a conveyance of one-fourth part of the land, is the contract made by him with Yale, by which he assigned to Yale his interest in the contract for the purchase; Yale agreeing to obtain a title for him for one-half of the interest which he contracted for with Jones, and undertaking to pay the whole purchase money. It appears from the testi-

mony that the interest which Yale acquired in this contract he conveyed to Jones, so that the latter became possessed of all the interest which was conveyed to Yale by the assignment. Assuming that this assignment was obtained from the complainant without the knowledge of Jones and of course without any fraudulent design on his part, what is its effect? Is it a conveyance of one-half of the complainant's interest, so that he is entitled now to only one-eighth of the lands? We think not. We think it quite clear that if Yale had never parted with his interest to Jones, he never could have claimed a title to any share of the land as against the complainant without payment of the stipulated sum agreed to be paid by him for the land. If this is so, it is equally clear that Jones, his assignee, can have no greater right. The proofs in the case fail to show that Yale or Jones has kept the agreement. If Jones had offered to convey one-eighth of the land to the complainant without the payment of any money by him; we do not see as he could claim any more of the land.

But certainly, Jones, after he had obtained a conveyance of Yales interest in the land, could not set up a right under it without a compliance with it on his part; he could not especially claim anything by virtue of that assignment, and at the same time insist that the complainant had no interest to assign.

Now the proofs show, beyond dispute, that Jones and those who now represent him in the suit have denied the complainant's right to the land altogether; they have denied that the complainant had any right to any portion of the land, and the defence of this suit is based on such denial.

But the transfer of the assignment by Yale to Harvey Jones transfered also the obligation to perform the duty which the contract imposed on the former, and we are not prepared to say but that if Jones, when he obtained the contract from Yale, had offered the complainant a deed of one-eight of the

land, in accordance with its provisions, he would have discharged himself of his obligation. But he did not do so; he refused to regard the complainant as having any right at all to the land, insisting upon an alleged forfeiture of it by a noncompliance with the conditions of the contract of sale. He could not of course claim any right himself under a contract which he thus repudiated. He could not at the same time claim that the complainant was not entitled to his eighth as stipulated in the contract, and that his original contract for the sale of the land was modified by it so as to entitle him but to the eighth. The two positions are incompatible, and we incline to the opinion that by taking an assignment of Yale's interest in the land, and refusing to comply with the obligations which it imposed upon him, the parties were restored to their original equities. How would the case have stood if Yale had not conveyed his interest in the land to Jones, but had refused to perform his engagement by paying Jones the purchase money, and procuring for the complainant a conveyance of one-half of his original purchase, and Jones had refused to convey upon having the purchase money tendered to him by the complainant? In that case, if the complainant had filed his bill making both Jones and Yale defendants, and Yale had answered the bill setting up his inability to pay the money, or claiming that a court of equity could not make a decree against him to compel the payment, we think it clear that a court of equity would decree that his interest in the land was forfeited and gone, and that if the complainant was obliged to pay for the land according to his agreement with Jones, he should obtain a title to it. No court would decree that while the purchase money was paid by the complainant he should obtain but one-half of the land contracted for. Jones and those who represent him can stand in no better position; they do not claim anything under the contract made by the complainant and Yale On the

contrary they refuse to perform their part of it, and thus refusing they cannot set up any rights under it.

### DECREE OF THE SUPREME COURT.

May 30th, 1855.

This cause came on to be heard on appeal from the decree of the circuit court of Marquette county, and was argued by counsel.

On consideration whereof, it is by the court now here considered, ordered, adjudged and decreed, that the decree of the circuit court of Marquette county in this cause, be and the same is hereby reversed with costs, to the said defendants and appellants. And it is further ordered that this cause be remanded to the said circuit court with directions to said court to enter an order in said cause that the same be referred to a commissioner to bring before him upon proper notice, the parties to this cause, and to receive proofs as to the amount of necessary improvements made upon the lands described in the contract between Harvey Jones of the one part, and Harrison Reed of the other, bearing date July 23d, 1846, set forth in the pleadings from the date of said contract, until the filing of the bill of complaint in this cause; by whom the same were made, the expenses or costs thereof, with the dates and amounts of all payments for such necessary improvements made by the parties respectively, and to whom the same were made respectively. Also that the Commissioner do take proofs as to the amounts expended in making such improvements upon said property as were necessary and required for the due use and preservation thereof at any time since the filing of the bill of complaint herein, with the dates of such expenditures, and by whom paid; that he also take proof as to the amounts received by either of said parties from the sales of any portion of said property, previous to the filing of the bill of complaint herein, and all rents, issues and profits,

derived by either, and all of the parties to the cause from said property, from the said 23d day of July, 1846, until the time of taking such proofs; the dates at which such rents, issues and profits were received, and by which of the parties; that the commissioner do report to the said circuit court all the proofs by him taken as to the character and necessity of the improvements, the costs thereof, by whom paid, and the dates of payment, as well as all proofs touching the receipts of rents, issues and profits, and proceeds of sales. And upon the coming in of said report the said circuit court is hereby directed to determine how much the said complainant ought to pay to the heirs and legal representatives of the said Harvey Jones as for his, the said Harrison Reed's, one-fourth part of all expenditures for necessary improvements made upon said property by the said Harvey Jones, or his heirs or legal representatives; and the sum of twelve hundred and fifty dollars; and in determining the amount which ought to be paid, the said circuit court shall allow interest at the rate of seven *per centum per annum* upon the said sum of $1250, from the 23d day of July, 1846, until the 4th day of April 1849, the date of the tender made by the complainant, as appears in this cause, and interest at the rate of twelve *per centum per annum* upon all amounts paid out and expended for such improvements as aforesaid by either of the parties; and shall charge each party the last mentioned rate of interest upon all moneys received by them respectively from sales, and as rents, issues or profits of said property; and if upon such determination it shall appear to the said circuit court that any amount or balance remains due, and ought to be paid by the said complainant to the legal representatives of the said Harvey Jones, then the said circuit court is hereby directed to enter an order in this cause, that the said complainant do within such reasonable time thereafter as the said court may direct, pay such amount into the

said circuit court for the benefit of and to be delivered over to the legal representatives of the said Harvey Jones. And upon the payment by the said complainant as hereinbefore provided for, or if the said circuit court shall find that the one-fourth part of the proceeds of all sales, and of the rents, issues and profits of said property which have been received by the said Harvey Jones in his life time, and by his legal representatives since his death, is equal to the amount which ought to be chargable to the said complainant as hereinbefore directed, then and in either case the said circuit court is hereby directed to enter a final decree in this cause, thereby vesting in the said complainant, his heirs and assigns, the undivided one-fourth part of all the rights, title and interest which the said Harvey Jones had in and to all of the lands described in the aforesaid contract of the date of July 23d, 1846, at the date thereof.

And if, upon the proof so returned, the said circuit court shall find that any amount or balance ought to be paid by the legal representatives of the said Harvey Jones to the said complainant, after taking into account the sums paid out by the respective parties for necessary improvements on said property, as well as the sums received by the parties respectively as proceeds of sales, and as rents, issues and profits, and also the said sum of $1250 and interest for the time, and at the rate hereinbefore provided, then and in such case the said circuit court shall, by decree, direct the payment by the legal representatives of the said Harvey Jones out of his estate to the said Harrison Reed of such balance.