REED vs. JONES and another.

Where this court decided that an appellant was entitled to an interest in certain land upon payment of the sum found due upon an account to be taken between him and the respondent, upon certain principles, in the court below, and an account was taken there, and a decree rendered accordingly, an appeal from that decree brings up only the question whether the account was taken correctly in accordance with the principles established in the decision of this court.

Under a direction to allow each party, in such account, for all expenditures after the commencement of the suit which were necessary to the due use and preservation of the common property, it was proper to allow the cost of a lock built by one of the parties after the suit was commenced, the erection of which was required by law as the condition of maintaining a dam previously

built upon the property, although the lock was somewhat more expensive than the law required, the proof showing that such a lock was desirable if any was to be built.

There would be strong equitable grounds to support a charge, in such accounting, for the personal services of the defendants' intestate (who was the original defendant) in managing and improving the property in question, even though there had been no agreement between the parties to that effect.

A charge for similar services of the defendants as administrators of the original defendant (which charge had not been allowed them against the estate of their intestate by the probate court), was not proper to be allowed in such accounting.

Under a direction that each party should be allowed interest on all of his proper expenditures, and be charged with interest "on *all* moneys received," it was proper to apply sums received by a party to the discharge of interest due him at the time from the other party for expenditures, charging interest against him for the *excess* only.

A commissioner to take an account between parties should state in his report what items were allowed, and what disallowed, so that either party may except to his decision upon particular items, and the court may determine the exceptions without re-examining the whole account.

On a general exception to the conclusion reached by such commissioner, this court will not foot up the items of a long account, calculate interest, &c., to ascertain whether the commissioner's computations are correct; but will confine itself to those items which are specifically objected to by one or the other of the parties.

The commissioner in this case reported the aggregate amount allowed by him to the defendants for expenditures, annexing a schedule stating the gross amount of such expenditures for each six months, but not showing the several items allowed by him. He also reported several items which he had disallowed. This court assumes as a fair construction of the report, that all the items of the defendants' account as stated in the evidence reported by the commissioner, were allowed by him, except those expressly referred to as disallowed.

Upon the accounting, the books of one of the parties, or schedules taken from them, containing long accounts of expenditures made to numerous parties, during a series of years, and the vouchers therefor, may be used to aid the memory of witnesses who had otherwise actual knowledge of the transactions and of the general correctness of the books and vouchers, and with their aid could testify to the actual expenditures; although many of the entries were so indefinite that it was impossible to determine, without explanation, to what transactions they related.

In an action against administrators, the plaintiff is not entitled, under our statute, to testify to transactions between himself and the defendants' intestate.

Under the circumstances of this case, the court directs that the judgment of the court below should be modified, &c., and that it should not give *costs* to either party.

APPEALS from the Circuit Court for *Marquette* County. A very full report of the facts of this case and the former

January Term,
1862.

REED
.v.
JONES et al.
decisions of this court therein, will be found in 8th Wis. Rep., pp. 392–470. The additional facts necessary to show the questions at issue in the present appeals, will sufficiently appear from the opinion of the court.

 *E. L. Buttrick*, for plaintiff.

 *Howe & Beckwith*, for defendants.

March 15.  *By the Court*, PAINE, J.   This case involved the right of the plaintiff to a conveyance from the defendants of an undivided quarter of a certain tract of land.  The defendants' intestate denied the right, and this suit was begun to enforce it.  The circuit court first decreed against the plaintiff, and from that decree he appealed to this court, where a judgment was rendered establishing his right to a conveyance upon the payment of such sum as might be found due upon an account to be taken.  The principles upon which the account should be taken were also settled.  An account was taken before a referee, and on another appeal by the plaintiff, this court held that it had not been properly taken, and ordered a new account to be taken in accordance with the principles first settled, which were then more fully explained.  Such other account has been taken, and judgment rendered by the circuit court upon the referee's report, from which it seems that both parties have appealed.  The defendants now claim that all the questions ever involved in the case, though twice decided by this court, are re-opened, and that we are now to determine not only whether this account has been properly taken, in pursuance of the previous decisions, but also whether those *decisions* were themselves right, and whether the plaintiff is entitled to a conveyance upon any terms.  To this proposition we cannot assent.  The judgment of this court establishing the plaintiff's right to a conveyance, was final upon that question.  True, an accounting was required to determine what the plaintiff should pay, if anything.  But that was the only question left open.  His right to a deed on the payment of such sum as might be found due, was positively and finally adjudicated.  The only way in which it could have been again opened would have been by a motion for a rehearing.  This doctrine was fully

settled when the case was last here. See the first part of the opinion of Justice COLE, 8 Wis., 462. See also *Washington Bridge· Co. v. Stewart et al.*, 3 How. U. S. Rep., 413; *Parker v. Pomeroy*, 2 Wis., 112; *Downer v. Cross*, id., 381; *Eastman v. Harteau*, 12 Wis., 275; in all which the same rule is asserted. It seems to us too obviously correct to require further examination.

This leaves only the necessity of deciding upon the exceptions taken to the commissioner's report. The plaintiff objects to the allowance of the cost of the new saw mill, as a part of the necessary expenditures upon the property. But we think the cost of this, as well as of the main dam, and other improvements of a kindred character, was very properly allowed, within the principles established upon that point by this court, 8 Wis., 464, 465. The fact that the parties contemplated the building up of a town, was there held to have an important bearing in determining what im-.provements were "necessary" within the meaning of the contract and of the former decree of this court, and the court expressly referred to the "new saw mill, dam," &c., as being fairly within the rule which it then established. We think that rule was proper, and that the commissioner properly followed it in allowing the cost of these items.

And in this connection it will be as well to notice one of the defendants' exceptions, that is, to the disallowance of the cost of the lock. It is true the lock was built after this suit was commenced. And it is also true that the former decision of this court establishes different rules respecting improvements made before and after the filing of the bill. Those made before which were necessary and proper in view of the original object of the parties to build up a town, were to be allowed. But after the suit was commenced, those only were to be allowed which were necessary to the due use and preservation of the property. The commissioner disallowed the cost of the lock upon the ground that it did not come within the latter rule. If the lock alone is to be considered, this would be correct. But the charter by which the defendants were authorized to maintain a dam, required the erection of a lock as a condition, and proceedings were instituted

against them for maintaining the dam without complying with it. They then erected the lock in question, which, though somewhat more expensive than the one required by the charter, the testimony seems to show, was a sufficient improvement to render it desirable, if any lock at all was to be built. In view of this provision of the charter, we think the lock may fairly be considered an improvement " necessary for the due use and preservation of the property," within the rule applicable to improvements after the suit was commenced. The dam having been previously built, and it being held a proper improvement at the time it was made, the erection of the lock became necessary under the charter, for the preservation of the dam, and consequently for the due use of all the property whose use depended on the existence of the dam. It should therefore have been allowed.

On the first accounting, it seems, the defendants' books of account and vouchers were admitted as direct evidence, which this court held improper. 8 Wis., 467–8. The plaintiff's counsel contends that the evidence upon the last accounting was equally improper, and did not differ substantially from the other. But we do not think so. The court placed its rejection of these accounts before upon the express ground that "many of the charges were so vague and indefinite that it was impossible to tell to what business or transactions they did relate, *and there was no evidence explaining them.*" But upon the last accounting these books, or schedules drawn from them, were used as memoranda, to refresh the memory of the witnesses, and they were substantiated by the evidence of Roberts and *Loyal H. Jones* explaining them. This is, from the necessity of the case, the only kind of evidence by which such accounts could ever be substantiated. It is not to be expected that any party carrying on a large amount of business, keeping long accounts running through ten or twelve years, would be able to produce upon the stand all the parties to whom he may have paid money. Nor is it to be expected that it is within the power of human memory, unaided, to recollect the items of such an account with sufficient accuracy of detail to testify specifically to any considerable portion of them. The most that can be done is

for persons so conducting business to keep accounts and to take vouchers, and when these are not direct evidence between the parties, they may be used as memoranda to aid the memory of witnesses who had otherwise actual knowledge of the transactions and of the general correctness of the books and vouchers. See *Sexsmith v. Jones and others*, 13 Wis., 565. The evidence upon the last accounting was of this character. Roberts was present, as book-keeper and otherwise, during a large portion of the time in which the accounts accrued. He testifies that many of the entries were made by him, and that he knew generally of their correctness, except in some instances when he was directed to make entries where he had no personal knowledge of the facts. *Loyal H. Jones* also testifies that he was present during the whole time from December, 1846, and "was familiar with the business and its transactions." He acted as administrator after the death of Harvey Jones, and in that capacity paid out the greater part of the account for expenses and improvements. He goes through the schedules made out from the books and vouchers, and by their aid testifies to their general correctness, and to the actual expenditure of the various and voluminous items. He also testifies that these items were for expenses and improvements on the property in dispute. The evidence is clearly of a different character from that which was before held improper, and is of the most satisfactory character by which it would seem possible to substantiate an account of such long standing.

But the plaintiff excepted to the conclusion of the commissioner as to the effect of this evidence. The commissioner reported that between the 14th day of April, 1849, when the suit was commenced, and the time of closing the proofs, there had been expended upon the property, for improvements and the due use and preservation thereof, the sum of $30,352.51. He gives a schedule, which does not show the items of the account allowed by him as constituting this gross sum, but simply consists of the gross amounts expended during each six months. What the items were appears only in the proofs, and there is nothing to show what items were allowed and what disallowed.

The correct way in deciding upon such an account would be for the report to show what items were allowed and what disallowed. Then either party could except to the particular items objected to, and the sufficiency of the exceptions could be determined on a review, without re-examining the whole. But it is true here that the commissioner does refer to several items which he disallows; the locks, the judgment of Jones & Yale, and the charge for services by *Loyal H. Jones.* And perhaps the fair construction of this is, that the accounts, as stated in the evidence reported, were allowed, with the exception of those items. The plaintiff's counsel does not object to the figuring of the commissioner, but to the character of the evidence by which the accounts were proved. Upon that we have already commented, and it is not to be expected that this court would take time to foot up the items of a large account like this, and calculate the interest upon each, in order to determine, upon a general exception to the conclusion of the commissioner, whether that conclusion was correct. We have looked through the items of the accounts. They purport generally to be of such a character as entitles them to be allowed. The testimony is positive that they were for expenses upon this property. And assuming the footings to be correct, we think the testimony is such as would sustain the finding. We shall therefore confine ourselves to the consideration of those items which are specifically objected to by the one or the other of the parties.

The defendants object that they were not allowed for the services of Harvey Jones in his lifetime. *Loyal H. Jones* testifies that there was an agreement between the parties, that "it was right to allow each for the services he rendered in the general supervision of the property," and also that *Reed* charged for his own services. *Reed* was sworn, and testified that no such agreement was made; but his testimony was objected to, and we think was inadmissible, inasmuch as the opposite party defended as administrator. This leaves it to be determined on the testimony of *Jones;* and upon that, whatever might have been the rule in the absence of such an agreement, we think the charge for the services of

Harvey Jones during his life time should have been allowed at what they appeared from the evidence to have been worth. And it must be conceded that such a charge has very strong equitable reasons to support it. If two parties enter into a joint speculation to build up a town by making improvements upon their property so as to induce settlement and thereby enhance its value, if one party not only advances his capital but devotes his whole services to the enterprise, it certainly does not seem just that the other, who may have been personally engaged in some other profitable business, should come in for his share of the increased value of the property derived from such services, without allowing anything for them to the party who rendered them.

But notwithstanding these considerations, we think the charge for the services of the administrator was properly disallowed. The agreement by the parties did not extend to these. And the administrator, being a trustee, whose compensation is specifically fixed by statute, subject to the allowance of additional compensation in certain cases by the probate court, we do not see how, in a collateral proceeding like this, he could be allowed a salary like that which is claimed for him in this case. To adopt such a rule would establish an inducement for such trustees to prolong litigation of this sort, and to neglect the settlement of the estates for which they acted.

The appellants also except to the manner in which interest was calculated on their receipts. They contend that they were entitled to have the sums received applied first to the extinguishment of the interest due them upon the sums expended, and that they should have been charged with interest only on the excess of receipts remaining after such application. This is undoubtedly the general rule in respect to an accounting by a creditor in possession of property, the rents and profits of which he is bound to apply in payment of the debt due him. See *Green* v. *Westcott*, 13 Wis., 606, and cases cited. Upon a careful consideration of the facts of this case, we are unable to see why the same rule should not be applied. The relation of the parties was entirely analogous to that of mortgagor and mortgagee, and it

would seem that their rights in accounting would be the same. The only room for doubt upon this point is, whether the former decree of this court did not imperatively prescribe the rule adopted by the commissioner, of charging interest upon the entire amount of the receipts without first applying any portion of them to the extinguishment of the interest due upon the advances. The language used in the decree, 8 Wis., 419, is certainly capable of that construction, and taken literally is, perhaps, incapable of any other. It directs that each party shall be charged with interest upon " *all* moneys received," &c. Still we think there was no intention, in using this general language, to cut off the right of the party receiving, to apply the moneys received, first, to the payment of any interest that might be due to himself from the other. That particular question was not in the mind of the court, and in directing generally that each party should be charged with interest on all moneys received, its language should be construed as being intended to be subject to any legal right which either had to first apply such moneys to the extinguishment of interest due himself. A computation of the interest upon the latter theory is attached to one of the briefs of the defendants' counsel, and if correct, it shows a difference of several thousand dollars in their favor. We have not gone over with the figures and shall not. But we think the defendants are entitled to such a change in the general results arrived at by the commissioner as this change in the manner of calculating would produce.

The defendants' counsel also claim that the report is incorrect in omitting a number of lots, which the proof shows to have been sold previous to the commencement of the suit, and with the proceeds of which the defendants are charged in the account.

It appears from the evidence referred to by them, that some omissions of that character were made, in the schedule of lots sold as reported by the commissioner, though for most of them nothing was received, except in the way of improvements which the purchasers agreed to make. We do not see how it is very material to have this correction made, for

the defendants will be bound to convey only an undivided
fourth of what remained unsold at the commencement of the
suit, and of course could not be held responsible for failing
to give a title to any lots that were sold before. We suppose they might show when lots were sold, although not
mentioned in the report. But for the sake of greater certainty it might be well enough to correct the report in that
respect.

Lastly, upon the subject of costs, we think this case entirely similar in all the points that have a bearing upon that
question, to that of *Green v. Westcott*, before referred to. *Reed* was obliged to come to this court to obtain an adjudication in favor of his right to a conveyance at all. In prevailing here upon that question he was allowed costs, because his right had been wrongfully resisted by the defendants. But that question being adjudicated in his favor, he stands then in a position very similar to that of a mortgagor coming to redeem, where something still remains to be paid. In such cases the mortgagor, not having tendered all that was due, is generally required to pay costs. But here the expense of accounting has been considerably increased by the defendants' wrongfully resisting the plaintiff's right to a conveyance, through this protracted litigation. And in view of all the facts, we think the judgment should be without costs to either party.

The result of our conclusions is, that the finding and judgment should be modified as follows:

1st. By allowing to the defendants the expense of the lock.

2d. By allowing them the value of the services of Harvey Jones in improving the property.

3d. By applying the moneys received by the defendants, first to the extinguishment of interest due on the advances by them, and charging them with interest on the excess only.

4th. By giving costs to neither party.

And as in the case of *Green v. Westcott* we shall leave the computations necessary for such modifications to be made in the court below.

The judgment is modified in the respects stated, with costs to the defendants in this court, and the cause remanded with directions that a judgment, so modified, may be entered.