(June 30, 1906.)

HUGH E. McELROY, Administrator of the Estate of JOHN G. WHITNEY, Deceased, Plaintiff and Appellant, v. W. G. WHITNEY, Surviving Partner, Defendant and Appellant.

[88 Pac. 349.]

DEATH OF PARTNER—DUTY OF SURVIVING PARTNER—APPOINTMENT OF REFEREE—POWER AND DUTY OF REFEREE IN REPORT—COURT MAY ADOPT REPORT OF REFEREE AS ITS FINDINGS—SALARY MAY BE ALLOWED SURVIVING PARTNER WHEN.

1. Upon the death of one partner, the surviving partner may continue the partnership business by and with the consent of the executor or administrator of the estate of the deceased and the approval of the probate court.

2. Unless by consent of the executor or administrator of the estate of the deceased partner, and the approval of the probate court, it is the duty of the surviving partner to settle the affairs of the copartnership as speedily as the best interests of the business of the copartnership will permit.

3. Where the complaint and answer pray for the appointment of a referee to take an accounting of the affairs of the copartnership and report his findings to the court as to the indebtedness of one to the other, and such report or findings show such indebtedness, and that all of the partnership affairs have been considered by the referee, the court may adopt such findings as the findings of the court.

4. Whilst the general rule is that the surviving partner is not entitled to a salary or compensation for managing and settling up the partnership business, it has its exceptions when a partnership has been carried on for some time after a dissolution by death, and such continuance has proved to be beneficial.

(Syllabus by the court.)

APPEAL from the District Court in and for Elmore County. Hon. Lyttleton Price, Judge.

Plaintiff commenced his action for an accounting. Referee appointed and reported in favor of plaintiff. Report and

findings adopted by the court and judgment rendered accordingly. Both plaintiff and defendant appeal. *Affirmed.*

Richards & Haga, for Appellant Whitney.

Where the court fails to find on all the material issues, the judgment must be reversed. (*Wood v. Broderson, ante,* p. 190, 85 Pac. 490; *Standley v. Flint,* 10 Idaho, 629, 79 Pac. 815.)

In case of reference, the parties are entitled to a statement from the referee of all the items of account between them, in order that either may, if he thinks proper, except to any particular item. The referee should state the account in detail, by items, times, dates, etc., and show the items claimed as well as those allowed. It is not sufficient on such a reference to report the testimony *en masse,* and the amounts in the aggregate, with no reference to items claimed and disallowed. (*Gage v. Arndt,* 121 Ill. 491, 13 N. E. 138; *Dewing v. Hutton,* 40 W.-Va. 521, 539, 21 S. E. 780; *McCampbell v. McClung,* 75 N. C. 393; *Sharpe v. Eliason,* 116 N. C. 665, 21 S. E. 401; *Brockman v. Aulger,* 12 Ill. 277; *Craig v. McKinney,* 72 Ill. 305; *Ransom v. Winn,* 18 How. 295, 15 L. ed., 388; *Newcomb v. White,* 5 N. Mex. 435, 23 Pac. 671; *O'Neil v. Perryman,* 102 Ala. 522, 14 South. 898; *Hurdle v. Leath,* 63 N. C. 366; *Cameron v. Bank,* 4 Tex. Civ. App. 309, 23 S. W. 334; *Pack v. Mighell,* 3 Wash. 737, 29 Pac. 556; 24 Am. & Eng. Ency. of Law, 2d ed., 234; 17 Ency. of Pl. & Pr. 1037; *Gapen v. Gapen,* 41 W. Va. 422, 23 S. E. 579; *Nims v. Nims,* 20 Fla. 204.)

The findings referred to in the order of reference do not mean findings as to what items should be allowed or disallowed either party. It shows clearly that the referee was to report to the court the result of his examination of the books and the taking of the account, and that upon the account having been taken, properly classified and balanced, the court itself would make such findings and enter such judgment as would be proper in the premises. The order directing the accounting

was based upon the decision in *Bradshaw v. Morris,* 20 Mont. 214, 50 Pac. 554.

The Montana statute on this question is practically indentical with ours. (See, also, *Murphy v. Patterson,* 29 Mont. 575, 63 Pac. 375.)

Frank Martin and Hugh E. McElroy, for Appellant McElroy.

It is the correct practice in suits for an accounting to dispose of all matters in bar of an accounting before the account is stated or a reference ordered. The ordinary decree in an accounting case is that an account shall be taken. (1 Ency. of Pl. & Pr. 102.)

As nothing in bar of the accounting was stated in the answer, the court entered its interlocutory decree directing an accounting. This decree amounts to an absolute disposition of the issues made by the pleadings, and nothing remains but the accounting. The reference was "the whole issue," and this included the making of the findings. There was no other issue left in the case. (Idaho Rev. Stats. 1901, secs. 3493, 3494.)

Our law requires the surviving partner to promptly close up and settle the partnership business. (Rev. Stats. 1901, sec. 4216.)

The general rule is well established that the surviving partner is entitled to no salary as surviving partner. He can only charge for services outside the scope of the partnership business. (*Loomis v. Armstrong,* 49 Mich. 521, 14 N. W. 505; *Starr v. Case,* 59 Iowa, 503, 13 N. W. 645; *Brown's Appeal,* 89 Pa. St. 139.)

STOCKSLAGER, C. J.—This is an appeal from the district court of Elmore county. The action was commenced in Canyon county and transferred to Elmore county for trial, the reason for which is not shown by the record. It is shown by the complaint that John G. Whitney, deceased, and W. G. Whitney were general partners doing business at the town of

Payette, under the name and style of the Payette Nursery. That on or about the fourth day of January, 1891, John G. Whitney died intestate, and that on the seventh day of October, 1901, the probate court of Ada county duly issued to plaintiff letters of administration upon the estate of said decedent; that he duly qualified. That upon the death of John G. Whitney, defendant W. G. Whitney took possession and control of the copartnership, as surviving partner, for the purpose of settling the affairs of the partnership, and except as herein admitted has failed and neglected and refused to account to plaintiff and his predecessors or to the personal representatives of said decedent. The copartnership property is set out in the complaint: ''That the interest of this estate in the nursery stock, notes, accounts, personal property and indebtedness due said partnership at Payette, Idaho, as plaintiff is informed and believes, was of great value, to wit, of the value of more than $20,000.''

The eighth allegation is: ''That the plaintiff is informed and believes said defendant has received from the property of said decedent, in the possession of defendant, as surviving partner, more than the sum of $17,441.63 in money, and has accounted to the said estate for not more than the sum of $12,441.63, and affiant states upon information and belief that the said defendant has failed and neglected to account to plaintiff or to the personal representatives of the estate of John G. Whitney, deceased, for a large balance of indebtedness due said partnership in notes and accounts, the exact amount thereof being to plaintiff unknown; and plaintiff alleges upon information and belief that the defendant has failed, neglected and refused to account to plaintiff or to the personal representative of said decedent, for the sum of more than $5,000, received by the defendant as surviving partner as aforesaid, the same being property of and belonging to the estate of said decedent John G. Whitney.''

The ninth allegation is: ''That plaintiff has demanded an accounting from said defendant and the payment to plaintiff of the money in the hands of defendant, prior to the com-

mencement of this action, particularly on the twenty-second day of March, 1902, and at numerous times prior to said date, and that the defendant has failed, neglected and refused to make such accounting or to pay said money to plaintiff.''

The tenth allegation is: ''That at the time of the death of said decedent said defendant was indebted, as plaintiff is informed and believes, to the said decedent and to the said partnership to the amount of more than $2,984 (the exact amount thereof being to plaintiff unknown), on account of money of the said partnership received by defendant and converted to his own use.''

The eleventh allegation is: ''That, as plaintiff is informed and believes, defendant has failed to account to the estate of said decedent for a large amount of nursery stock of the value of more than $3,000, and has failed to account for a large amount of personal property, consisting of notes and accounts, the value being to plaintiff unknown, and that plaintiff has reason to believe and therefore alleges that defendant has received into his possession a large amount of property of said estate, the exact nature and character of which is to plaintiff unknown, and that defendant should be required to disclose the same and account therefor to this plaintiff.''

The next allegation is that upon information and belief no settlement of the said copartnership business or accounts has ever been made between said defendant and plaintiff or the personal representatives of decedent, and that although requested to make such settlement, defendant refuses to come to a final settlement with respect thereto, and has also refused to render to plaintiff any account of the property of the said partnership in the hands of defendant as surviving partner. Then follows prayer for an accounting of all copartnership dealings and transactions from the time of the commencement thereof to the time of dissolution by the death of John G. Whitney.

An answer was filed to this complaint putting in issue all the material allegations thereof, and then alleges that on or about April 1, 1889, the deceased, Whitney, and defendant

had a full and complete settlement and accounting of all matters between the said decedent and defendant in writing, signed by said decedent and defendant, and then prays judgment as follows:

First. "That an account may be taken of all the said partnership dealings and transactions from the first day of April, 1889, to the time of the dissolution by the death of said deceased, John G. Whitney, and of the money received and paid by said partners respectively in regard thereto, and that an account may be taken of all dealings and transactions with regard to the property, assets and effects of said firm since its dissolution by the death of said John G. Whitney and the property sold or disposed of by this defendant either as surviving partner or otherwise, and the money collected and received and paid out by this defendant on account thereof, and the balance, if any, still remaining undisposed of."

Second. "That the plaintiff may be adjudged to pay to the defendant the residue which shall appear to be due to the said defendant after the payment of all the debts of the said firm."

Third. "That the real estate described in the complaint as situate in Washington county, Idaho, be declared to be the property of said partnership, and that defendant hold the title thereof in trust, and that he may be required to make the conveyance of the title to the undivided one-half thereof to the said plaintiff and account for the rents thereof."

On the twenty-first day of May, 1902, we find an order termed; "Decree Directing Accounting and Appointing Referee," by which it is shown that an order was made by agreement in open court, and that J. T. Pence was appointed such referee by agreement of counsel, the important part of which is as follows:

"It is therefore ordered, adjudged and decreed that an account be taken of all the partnership dealings and transactions between the decedent, John G. Whitney and W. G. Whitney, from the date of their last settled account to the time of the dissolution of said partnership by the death of said John G. Whitney, and of the moneys received and paid by said

partners respectively in regard thereto and between one another, and that an account be taken of all dealings and transactions with regard to the property, assets and effects of said firm since the dissolution by the death of said John G. Whitney, and the property sold or disposed of by this defendant either as surviving partner or otherwise, and the moneys collected, received and paid out by this defendant on account thereof, and the balance, if any, still remaining undisposed of. And it is further ordered, adjudged and decreed that J. T. Pence, Esq., of Boise, Idaho, be appointed and he hereby is appointed referee in this action for taking such account, with full power to require the parties hereto to appear before him. the said J. T. Pence, Esq., at such time or times and place or places as said referee may require and give testimony and produce documentary evidence concerning any and all matters involved in this action and the taking of such account, and the said referee may direct the taking of depositions, hear the testimony of witnesses and examine such books, papers and accounts, and require such statements from plaintiff and defendant as in his judgment is necessary to completely determine what amount, if any, is due from either of said parties to the other of them, and report his findings to this court not later than the 10th day of October, 1902. And it is further ordered and decreed that the defendant, W. G. Whitney, make and file with the said referee, not later than the 1st day of July, 1902, a debit and credit statement of the accounts between himself and the decedent, John G. Whitney, and plaintiff herein and his predecessors as administrators of the estate of said John G. Whitney, deceased.''

It will be observed that this order of reference empowers the referee with complete authority to hear and determine all the disputed facts between the parties, and to determine what amount, if any, is due from either of said parties to the other. and report his findings to the court not later than a day fixed in the order.

That the referee reached a conclusion and notified counsel of such fact is shown by the record, but the date is not shown.

Twenty-five objections to the findings were filed by counsel for defendant, and on the twenty-sixth day of February, 1904, the court made and caused to be entered an order as follows: "It is ordered by the judge of this court that the said referee further report to the court a finding of fact upon each of the issues presented by the pleadings; that is to say, all matters set up in the complaint which are denied by the answer and thus put in issue; and in reporting the amount due from the defendant to the plaintiff, that the referee classify the account into its different parts as near as he may be able to do so from the evidence in the case before him, and report the balance in favor of either party upon each of such classifications; that is to say, the amount realized, if any is proved, from the continuance of the copartnership business subsequent to the death of the decedent, the real estate owned by the estate of the decedent and the defendant at the time of the commencement of this suit, if there was evidence before him from which this may be found; and also the amount of personal property so owned, including notes and accounts; also the amount of salary awarded to the defendant in the total amount found by the referee and for what period of time; whether the decedent, on or about the fourth of January, 1900, received $1,000 from the First National Bank of Idaho; the amount of money paid out by defendant on account of the Coopville property, and whether or not, in the final result obtained by the referee, such amount was included; also a statement of all items which were claimed by the defendant at the hearing and which were disallowed by the referee; also a report what disposition was made of the real estate and personal property belonging to the estate that came into the hands of the defendant after the death of the decedent. The purpose of this order is to enable the court to make findings covering all the issues in the cause, and make them in such a way as to enable either party to intelligently attack the findings if they should so desire on a motion for a new trial based on insufficiency of the evidence to support them. And the court directs this report to be made on or before the first day of

May of the present year and filed with the clerk of this court at Mountain Home, Idaho.''

Complying with this order of the court, on the thirtieth day of April, 1904, the referee filed his report, which was afterward adopted by the court as the findings in the case and judgment was entered accordingly.   The findings are as follows:

''Referee finds: 1. That on the fourth day of January, 1891, John G. Whitney died intestate at Payette, Idaho, and that thereafter, on or about October 7, 1901, plaintiff was duly appointed administrator of said decedent's estate; that he duly qualified and entered upon the discharge of his said duties, and that he has continued in the discharge thereof to the present time, and that said letters of administration have not been revoked.

''2d. That at the time of the death of said John G. Whitney, and for a long time prior thereto, said John G. Whitney and W. G. Whitney, defendant, were general partners in the nursery business at Payette, Idaho.

''3d. That upon and at the time of the death of said John G. Whitney, W. G. Whitney, defendant, took possession and control of all the property of the copartnership as surviving partner, and has continued to so act up to the present; that prior to this no final accounting of the estate matters has been made by defendant.

''4th. That at the time of the death of John G. Whitney, said decedent and the defendant herein were the joint owners of the following described real property: The east half of the southeast quarter of the southeast quarter and west half of southeast quarter of southwest quarter, section 27; also that portion of land lying east of the O. S. L. Railroad track, bounded by a line running parallel to and 100 feet from the center of the railroad bed, situated in the southwest quarter of the southwest quarter of southwest quarter, section 27; also the north half of the southwest quarter, section 27, in the then Ada county, Payette, Idaho; also the following described land, commencing at a point 250 feet east of the northwest

corner of Shannon's addition of Weiser City, Washington county, Idaho, thence east 200 feet, thence north 435 feet 6 inches, thence west 200 feet, thence south 435 feet six inches, to place of beginning, in all two acres, in Weiser, Washington county, Idaho; also sixteen lots in the town of Asotin, State of Washington.

"5th. That the Payette realty described in the preceding paragraph was distributed by order and decree of the district court of the third judicial district of the state of Idaho, entered of record April 30, 1892.

"6th. That the Weiser, Idaho, and Asotin, Washington, properties were held by defendant as surviving partner at the time of the institution of this action; that there was no other partnership property in real estate.

"7th. That said Weiser and Asotin properties at all times stood on the records of the respective counties in the name of the defendant, but that they were in reality a joint property of the decedent and defendant.

"8th. That since the commencement of this suit defendant has sold the said Weiser and Asotin properties and has accounted for the proceeds of sale thereof, and has given the estate of decedent credit for one-half the proceeds and said credit is taken into consideration in this report.

"9th. That at the time of the death of said John G. Whitney, defendant was indebted to said decedent in the sum of $2,126.62.

"10th. That defendant has accounted to the estate for all realty, personal property, notes and accounts.

"11th. That no final settlement of the account of the partnership business had been made prior to this action.

"12th. That the partnership between defendant and decedent was a general partnership, and that each partner was entitled to an undivided one-half interest in the proceeds.

"13th. That on or about May 25, 1889, decedent and defendant had a full and complete settlement and accounting with respect to said partnership business.

"14th. There was no personal property nor credits of any value in the hands of the defendant at the commencement of this action.

"15th. That defendant is entitled to a salary of $600 per year for the years 1891 and 1892, after which partnership sales were not made, a total amount of $1,200 for managing partnership business as surviving partner.

"16th. That on or about the twenty-fifth day of December, 1899, a note was given by decedent and defendant to the First National Bank of Idaho, and that defendant paid the said note on May 1, 1890, and credit is given him therefor.

"17th. The amount of money paid out on the Coopville property amounts to $467.84. This is taken in consideration in the account, but not allowed defendant in his claim against the estate, as the Coopville property was not the property of said estate.

"18th. The disposition and control of all the partnership property was in the hands of the defendant from the time of death of John G. Whitney. The disposition of real estate has been heretofore referred to. The nursery stock was purchased from the administrator by defendant for the sum of $1,000 in 1894; there was an amicable adjustment and agreement of the rest of the personal property, and this was divided between the estate and defendant. The notes and credits were considered of little or no value by the defendant and administrator, and were turned over to the defendant, and no charge made against him therefor, and the referee finds the notes and accounts of no value.

"19th. The amount realized by the estate from the continuance of the partnership business subsequent to the death of decedent is $8,103.83, plus the $2,126.62 due the estate after death of John G. Whitney, equals $10,230.45, and is contained in the result of thousands of items, counter debits and credits and as shown in the books of accounts introduced at the trial thereof. The final result of said accounting, be-

ing against defendant and in favor of plaintiff, in the sum of $416.11, with interest thereon from May 19, 1900:

"J. T. PENCE, Referee."

Appellant has assigned many errors of both law and fact, but a review of them discloses that they are nearly all based on the theory that the evidence was insufficient to support the findings and conclusions reached and reported by the referee, and that the referee neglected to comply with the order of the court in making his report, in that he does not find on all the issues presented by the pleadings as directed by the court.

From the entire record before us for review we are led to the irresistible conclusion that the all-important question to be determined by the referee was the financial relations existing between defendant and the heirs of his deceased brother, and for many years his business partner. By the complaint and answer we are informed that there was a difference of about $11,000 growing out of the former and subsequent relations existing between the two brothers. The plaintiff, as the representative of the deceased Whitney, alleging that a final accounting would show an indebtedness of $5,000 or more due the estate, and the defendant averring that such an accounting would show the estate indebted to him in the sum of $6,000 or more, and both praying for such accounting. The court appointed Mr. J. T. Pence, an able and in every way reputable attorney of this court, with full power to hear testimony on all the issues found by the pleadings, and within a specified time to report his findings and conclusions to the court.

Counsel for appellant earnestly insist that the report of the referee is not complete and does not meet the requirements of the order of the court, particularly in that it does not classify the items of debit and credit. We find that the referee filed a report which was objected to by counsel for appellant, and the court made an order requiring the referee to make the report more definite as to certain issues presented by the pleadings.

We find the following reasons assigned by the learned trial judge who made the order: ''The purpose of this order is to enable the court to make findings covering all of the issues in the cause, and make them in such a way as to enable either party to intelligently attack the findings if they should so desire on a motion for a new trial, based on insufficiency of the evidence to support them.'' This order was made and filed February 26, 1904. On the thirtieth day of April, 1904, the referee filed his findings, termed ''Supplemental report.'' Again, there was an objection to the sufficiency of these findings interposed by counsel for appellant which was filed May 3, 1904. On the twenty-fourth day of May, 1905, the court adopted the findings of the referee and ordered judgment according to the report of the referee. The nineteenth finding of the referee is as follows: ''The amount realized by the estate from the continuance of the partnership business subsequent to the death of decedent is $8,103.83, plus the $2,126.62 due the estate after death of John G. Whitney, equals $10,230.45, and is contained in the result of thousands of items, counter debits and credits and as shown in the books of account introduced at the trial hereof. The final result of said accounting being against defendant and in favor of plaintiff, in the sum of $416.11, with interest thereon from May 19, 1900.''

This conclusion was reached by the referee after hearing all the evidence offered by the parties to the litigation and an opportunity to examine all the exhibits introduced by appellant, which consisted of the books of the copartnership, stubs of the partnership check-books, together with an itemized statement prepared by appellant for the use and benefit of the referee purporting to show all the business transactions from the time of the settlement between appellant and his deceased brother, which was found by the referee to have been ''on or about May 25, 1889.''

It is insisted by appellant's counsel that many errors are shown to exist in the books of the company, which, if corrected, would leave a large balance due appellant from the estate

of his deceased brother. It is apparent that the referee took into consideration all these questions in arriving at his final balance.

The tenth finding of the referee is: "That defendant has accounted to the estate for all realty, personal property, notes and accounts," thus exonerating him from all intentional wrong. It is not difficult to see that the entire trouble has arisen over carelessness in the manner of keeping the books and accounts of the partnership, and we cannot see how any good would follow another long expensive trial.

The fifteenth finding of the referee is: "That defendant is entitled to a salary of $600 per year for the years 1891 and 1892, after which partnership sales were not made, a total amount of $1,200 for managing partnership business as surviving partner."

Plaintiff appeals from the judgment and assigns as error the allowance of the $1,200 as salary to defendant. Our attention is called to section 5554, Revised Statutes, which is as follows: "The surviving partner must settle the affairs of the partnership without delay, and account with the executor or administrator, and pay over such balance as may from time to time be payable to him, in right of the decedent."

It is true, as urged by counsel for respondent, that the general rule is that the "surviving partner is entitled to no salary as surviving partner" for managing partnership business. In support of this contention our attention is called to *Loomis v. Armstrong,* 49 Mich. 521, 14 N. W. 605; *Stow v. Case,* 59 Iowa, 503, 13 N. W. 645; *In re Brown's Appeal,* 89 Pa. St. 159.

In American and English Encyclopedia of Law, volume 22, pages 220-226, the rule is stated as follows: "The surviving partner is not entitled to compensation for collecting the assets and winding up the firm business, as a general rule, in the absence of express agreement to that effect. There are, however, exceptions to this rule in modern adjudications. When a partnership has been carried on for some time after dissolution by death and such continuance has proved to be beneficial, it has been held that the surviving partner should

be allowed to take compensation for his services to be deducted from the profits before they are divided." A number of authorities are cited in support of this text. (*Maynard v. Richards,* 166 Ill. 466, 57 Am. St. Rep. 145, 46 N. E. 1138.)

On the subject of salary above referred to the referee in his preliminary report says: "The salary for the years 1891-1892, as they seem to be reasonably fruitful years for both the surviving partner and the estate, the salary of $600 is allowed for 1891, and $600 for 1892, as that was a reasonable time within which to close up the partnership affairs, and for the further reason that during the succeeding years there was practically nothing coming to the estate, salary for the years 1893, 1894, 1895, 1896, 1897, 1898, 1899, 1900 and 1901, as claimed by the defendant, is not allowed." Owing to the complicated condition of the books and accounts of the copartnership business as shown by the testimony of appellant and the report of the referee, and the further fact that the appellant is largely responsible for such complication, he having full charge and management of the affairs and property of the partnership, we do not think equity demands another trial.

It is urged by learned counsel for appellant that it is shown by the report of the referee that at the time this suit was commenced the estate was indebted to appellant, and for this reason respondent should be required to pay the costs. On the other hand, it is claimed by learned counsel for respondent that the action so commenced was based on the reports of appellant to the probate court and administrator of the estate, by which it was apparent that appellant was largely indebted to the estate.

We are of the opinion that the judgment should be affirmed, and it is so ordered, with costs awarded to plaintiff and appellant McElroy.

Ailshie, J., and Sullivan, J., concur.

(January 19, 1907.)

ON REHEARING.

[88 Pac. 354.]

DUTIES OF REFEREE—STATEMENT OF ACCOUNT.

 1. In an action for accounting in the settlement of a partnership business, where the court appoints a referee and authorizes and directs him to take an accounting of the business and transactions of the partnership, the parties are entitled to a statement from the referee of all the items of account between them, and to have the same reported to the court showing the items allowed and rejected in favor of and against each party.

(Syllabus by the court.)

Both plaintiff and defendant appeal from a judgment adopting report and findings of referee in an action for accounting. *Reversed.*

Richards & Haga, for Appellant Whitney, submit the following citations in addition to authorities cited on former hearing:

"The master or referee should report the account at length, and all the facts found by him, so that the report may be intelligible without reference to the testimony. . . . . The report should contain a statement of all the items of the account between the parties, . . . . and the items should be so presented that exceptions may be taken thereto. And an aggregation of items in accordance with the referee's conclusions is insufficient. . . . . Items allowed and disallowed should be stated." (Citing authorities; 15 Ency. of Pl. & Pr. 959.)

The correct way in deciding upon such account would be for the report to show what items were allowed and what disallowed. Then either party could except to the particular items objected to. And the sufficiency of the exceptions could be determined on a review, without examining the whole. (*Reed v. Jones,* 15 Wis. 40.)

The appellant Whitney excepted to the report for the reason that he was unable to tell what items entered into these aggregate amounts, and therefore he could not intelligently except to the allowance or disallowance of any special item. This exception should have been sustained, and the report recommitted, with direction to the commissioner to make an itemized statement showing item by item the credits, debits and all sums disallowed. (*Dewing v. Hutton,* 40 W. Va. 521-539, 21 S. E. 780.)

Hugh E. McElroy and Frank Martin, for Appellant McElroy.

AILSHIE, C. J.—A rehearing was granted in this case and it was again argued at the present term. The question dwelt upon and most strongly argued on the rehearing is, "the entire failure on the part of the referee and the court to furnish a statement of the items allowed and disallowed." As may be observed from an examination of the former opinion in this case, the referee did not report a statement of account between the parties—he did not report the debits and credits or the items allowed and disallowed in favor of and against each party. The powers and duties of the referee in this case are measured by the order of reference and the essential purpose of that order and the object of the appointment appears to have been "for taking such account"; namely, an accounting between the parties. The question did not arise in this case as to the power of the referee to make findings of fact and conclusions of law, but the action of the trial court seems to indicate that such power was not conceded. Counsel for appellant claim that the court took the view announced in *Bradshaw v. Morris,* 20 Mont. 214, 50 Pac. 554, and *Murphy v. Patterson,* 24 Mont. 575, 63 Pac. 375, as to the power and authority of the referee under the order of reference. As we view this case, however, after a further examination thereof it occurs to us that the vital question is as to whether the referee has discharged the duties for which he was appointed

and whether the court should have accepted or rejected his report. In 24 American and English Encyclopedia of Law, second edition, 234, the author in considering the rights of the parties in such case says: "The parties are entitled to a statement from the referee of all the items of account between them, in order that either may, if he thinks proper, except to any particular item." To the same effect is 17 Encyclopedia of Pleading and Practice, 1037, and 15 Encyclopedia of Form and Procedure, 956.

The respondent contends that since the dealings and transactions of the parties cover several thousand items, it would be an endless task to report each item and the action of the referee thereon. The contention is not sound, for the reason that the referee has of necessity had to arrive at the conclusion as to the amount due from some data or computation of accounts. As said by the supreme court of Washington in *Park v. Mighell,* 3 Wash. 737, 29 Pac. 556: "He must have had some data from which to arrive at that sum, and he should have given the court the benefit of that by stating clearly what items he allowed for and against each party. In other words, he should state the account between them. It is only by so doing that the court can intelligently review his action and decide whether to confirm or reject it." (*Hurdle v. Leath,* 63 N. C. 366; *McCampbell v. McClung,* 75 N. C. 393; *Reed v. Jones,* 15 Wis. 40; *Gage v. Arndt,* 121 Ill. 491, 13 N. E. 138.)

In this case the order required that the defendant W. G. Whitney, who was the surviving partner, and as such in charge of the books, accounts and vouchers pertaining to the business for which the accounting was to be had, should "make and file with the said referee, not later than the first day of July, 1902, a debit and credit statement of the accounts between himself and the decedent, John G. Whitney, and plaintiff herein and his predecessors as administrators of the estate of said John G. Whitney, deceased." The statement of account was made and filed by the defendant, and we see no good or valid reason why the referee could not have re-

ported to the court the account as taken by him, and what should be allowed and what rejected. If it is true that the parties or either of them had not the right to insist on that being done, their right to object and except to the report or any part thereof, and have it reviewed by the district court or on appeal, is an idle thing of no virtue or protecting force, and a delusive snare to the unwary. For the failure of the referee to make a statement of account as directed by the order and to report the same to the court, we are convinced that the judgment should be reversed. Judgment is reversed and cause remanded, with directions to the trial court to take further action in accordance with the views herein expressed. Under the circumstances of this case and in view of the whole record we have concluded to require each party to pay one-half of all costs incurred on this appeal.

Sullivan, J., concurs.

Stewart, J., took no part in the decision.